title, and not upon examination, held unlawful and unreasonable.

In Mandamus.
Writ allowed.

On petition for review,

Order reversed and cause remanded.
Stuart R. Bolin and Sheck, Stephens & Hargreaves, Columbus, for Midwestern Film Exchange.

Matthew L. Bigger, Max M. Matusoff and Edward T. Powell, Columbus, for Frank Mantell, Plaintiff.

Edward C. Turner, attorney general and C. F. Laylin, Columbus, for defendants.

BY THE COURT:

These two cases were filed in this court and are similar in character, both seeking the same ultimate relief. The former is styled an action in mandamus, the latter a petition for review under Sertion 871-53. General Code. In both cases an effort is made to review an order of the department of education refusing to censor a film, called the Dempsey vs. Tunney Boxing Exhibition held at Chicago, Illinois, September 22, 1927;" and in each case the director of education has filed an answer containing substantially similar defenses.

The pleadings on file in the mandamus proceeding admit that due application for censorship were made, that no examination of the film was made, and that the director of education, as censor ex officio, refused to accept the films for censoring, "basing his judgment and decision on the statutes applicable to this censoring of pictures." It is alleged, and not disputed that the films submitted for censorsing were made in this state, as were the negatives therefrom; that these prints and negatives were never transported into this state by mail, express or common carrier, and that such films, or copies thereof, if approved, were for use solely within the state of Ohio. Substantially similar averments are contained in the petition for review filed by Mantell.

In addition to the admissions made by the director of education, contained in his several answers, he alleges the following as a ground for refusing to accept said films for censorship, viz: that by reason of the title of such film and of his own general knowledge of the event portrayed "it was and is unnecessary for him to actually examine said film in order to exercise his judgment and discretion to determine whether or not such film was of a moral, educational or amusing and harmless character so as to entitle it" to his approval, and that, in his judgment, obtained from his general knowledge, and evidence adduced, the film was neither moral, educational nor of an amusing and harmless character. We rest our decision upon the application of our own statutes to the duties and obligations of the board of censors with respect to the censorship of picture films tendered to it for approval.

By virtue of the provisions of Section 154-46, General Code, there have been conferred upon the Department of Education all the powers and duties theretofore vested in the Industrial Commission of Ohio and the Board of Censors of Motion Picture Films by Sections 871-48 to 871-53, General Code. By the provisions of Section 154-47, General Code,

there has been created an advisory board of film censorship, whose duties are specifically described therein. That section reads; "An advisory board of three members is hereby created in the department of education, to be known as the advisory board of film censorship. * * * Such board shall assist and advise the department of education in the examination and censorship of motion picture films."

It is conceded that the director of education not only failed to procure the advice and assistance of this board, but predicated his refusal on the application for exhibition, not upon an examination of the film, but upon what he terms "his general knowledge" of its character. In so doing there was a noncompliance with the statute which requires the approval or disapproval of the film to be based upon its examination.

Section 871-48, General Code, provides: "It shall be the duty of the board of censors to examine and censor as herein provided, all motion picture films to be publicly exhibited and displayed in the state of Ohio."

The following section, Section 871-49, General Code, reads:

"Only such films as are in the judgment and discretion of the board of censors of a moral, educational or amusing and harmless character shall be passed and approved by the board. When a film has been censored by the board of censors a certificate showing the approval or rejection of such film shall be issued to the party submitting the film."

It is manifest that these sections of the law, governing film censorship, were not complied with. While the court would not disturb the exercise of a sound discretion upon the part of the board, in its approval or disapproval of a film, yet the order of the director basing his disapproval upon what he terms his "general knowledge" of the film and its title, and not upon examination, was not made in compliance with the aforesaid sections of our law relating to film censorship.

It therefore follows that the order of the director, made under such circumstances was unlawful and unreasonable, and the cause is accordingly remanded to the department of education for further proceedings conformable to the laws of the state.

# U. S. Circuit Court

## DIGEST AND SYLLABI

Latest U. S. Court Decisions applicable in Ohio practice.

### PENNSYLVANIA RD. CO. v. STEGAMAN

Circuit Court of Appeals, 6th Circuit.

No. 4639.    Decided Oct. 14, 1927.

**991. RAILROADS—829. Negligence—941. Practice and Procedure.**

Passenger not responsible for driver's failure to look for coming train, at country crossing.

Assuming negligence of railroad, failure of bus driver to observe statutory duty to ascertain whether train was coming, held not proximate cause of collision injuring passenger; such failure being no more than contributory negligence, for which passengers in bus were not responsible.

**2. Giving statutory warning signals imperative.**

Error in submitting issues where railroad was negligent in running trains at excessive speed, or in failing to give warning signals in addition to those required by statute, held to require reversal even though it was probable that the jury would, in any event have found that railroad was negligent in failing to give statutory signals.

**3. Speed of trains in country may be such as operators deem safe, where no legal regulation exists.**

Failure of general assembly to regulate speed of trains in the country, impliedly warrants railroads in running their trains in the country at such rate of speed as those in charge may deem safe.

**4. Existence of fog—maintenance of ordinary speed over crossings, sufficient.**

Where crossing signals required by 8853 Ohio GC. are given, the maintenance of ordinary speed over crossings during fog gives no independent basis for a conclusion that railroad is negligent.

**5. Repeated signals not required.**

The mere existence of a fog, obscuring view of train approaching crossing and striking a bus and injuring a passenger therein, held insufficient to justify jury in finding that duty existed to repeat crossing signals, if given as required by 8853 Ohio GC.

**941. PRACTICE AND PROCEDURE.**

Submission of a special issue by the judge, sua sponte.

The trial judge may often, on his own motion submit a special issue, with benefit to the public interest.

Error to U. S. District Court. N. D. O. Killits, J.

Geo. R. Effler, Toledo, and Wheeler & Bently, Lima, for Railroad.

Geo. W. Ritter, Toledo, Hoke & Wright, Van Wert, and Ritter & Brumbach, Toledo, for Stegaman.

DENISON, CJ.

Action by defendant Arthur Stegaman against The Penna. Railroad Co. on account of death of his minor son. Judgment for plaintiff reversed by this decision.

(Denison and Moorman, CJJ., and Hough, DJ.)

For full opinion, see 22 Fed. Rep. (2'd) 69.

---

### WHITAKER-GLESSNER CO. v. OHIO SAV. BK. & TR. CO.

Circuit Court of Appeals, 6th Dist.

No. 4945.  Decided Nov. 18, 1927.

**539. FIXTURES—997. Real Estate—787. Mortgages.**

**1. When chattel annexed to realty becomes—application of to use by, and intention of annexing party.**

Personalty becomes a fixture on the concurrence of its annexation to the realty or something appurtenant thereto, its application to the use or purpose to which the realty is appropriated, and an intention on the part of the party annexing it to make it a permanent accession to the freehold.

**2. Intention of annexing party to make it permanent, and to remove, how to be determined.**

Where a chattel may be removed without injury to it or the realty, the manner of its annexation and other circumsatnces and facts, including its possible uses, are to be considered in determining the intention of the party annexing it.

**3. Machinery bolted to floor, in canning factory, as between company and mortgagee, held a part of the realty.**

Machinery bolted to the floors of a canning factory, both realty and machinery being owned and used by a canning company for the sole purposes of the business, though removable without injury to itself or the realty, held a fixture as between the company and a mortgagee.

Appeal from U. S. Court.  E. D. S. D. of Ohio.  Benson W. Hough, J.

Geo. W. Ritter, Toledo, and John S. Brumback, Toledo, for appellant.

John F. Wilson, Columbus, and John E. Morley, Cleveland, for appellees.

MOORMAN, CJ.

Suit in equity by the Ohio Saving Bank & Trust Company, Trustee, and others, against the Whitaker-Glessner Co.  Decree for complainants, and defendant appeals.  Affirmed.

(Denison and Moorman, JJ.)

For full opinion, see 22 Fed. Rep. (2'd) 733.

---

### STURZINGER v. HART

Circuit Court of Appeals, 6th Dist.

No. 4819.  Decided Dec. 12, 1927.

**1002. RECEIVERSHIP—144. Bill of Sale.**

Claimant of goods under a bill of sale, who intervenes in receivership, held entitled to the goods stored for it in building occupied by company.

In receivership of solvent company, intervener, which had advanced money to such company and in return received bills of sale for goods of equal value stored in building occupied by company held entitled to such goods, in absence of fraud or bad faith, or showing of injury or detriment to company's creditors or stockholders.

Appeal from U. S. Court.  W. D. N. D. of Ohio.  John M. Killits, J.

J. F. Hertlein and H. L. Peeke, Sandusky, for appellant.

King, Ramsey & Flynn, Sandusky, for appellees.

PER CURIAM

In re receivership of the Erie Food Products Company, in which Alfred L. Hart and others, a partnership, intervened.  From a ruling sustaining the claim of interveners to certain goods, Albert L. Sturzinger, receiver, appeals.  Affirmed.

(Denison, Moorman and Knappen, JJ.)

For full opinion, see 22 Fed. Rep. (2'd) 801.